United States District Court
Southern District of Texas
**ENTERED**
August 31, 2026
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| Avivia B.,[1] | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | Civil Action H-25-4289 |
| | § | |
| Frank J. Bisignano,[2] | § | |
| Commissioner of the Social | § | |
| Security Administration, | § | |
| *Defendant*. | § | |

## MEMORANDUM AND ORDER

Avivia B. appeals the Social Security Administration Commissioner's final decision denying her application for Social Security benefits. ECF No. 1. Pending before the court are Plaintiff's Motion for Summary Judgment, ECF No. 9; and the Commissioner's Response and Cross Motion for Summary Judgment, ECF No. 13. The parties consented to the jurisdiction of the undersigned magistrate judge for all purposes, including entry of final judgment. ECF Nos. 4, 8. Plaintiff's Motion for Summary Judgment is **DENIED**. The Commissioner's Motion for Summary Judgment is **GRANTED**. The Commissioner's final decision is **AFFIRMED**.

### *1. Procedural Posture*

On September 18, 2023, Avivia filed applications for disability insurance benefits, under Title II of the Social Security

[1] In light of guidance received from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, which states that there are significant privacy concerns in social security cases, the court refers to the Plaintiff only by their first name and last initial.

[2] Pursuant to Federal Rule of Civil Procedure 25(d), Frank J. Bisignano is substituted as the defendant in this suit.

Act, and supplemental social security income benefits, under Title XVI of the Social Security Act. Tr. 232–233. Avivia alleged that her disability began on June 1, 2023, due to back pain, carpal tunnel, nerve damage, and manic depression. Tr. 290.

The SSA denied both of Avivia's applications at the initial level on June 5, 2024, and upon reconsideration on October 14, 2024. Tr. 118–22, 123–27, 134–37, 138–41. Administrative Law Judge (ALJ) William Sharp held a hearing on April 9, 2025. Tr. 48–73. Avivia's counsel was present at the hearing. Tr. 50. Avivia testified about her education, work history, and medical conditions. Tr. 52–68.

As to her education, Avivia testified that she completed the eleventh grade, but she neither graduated from high school nor obtained a GED. Tr. 52.

As to her work history, Avivia testified that she previously provided hair, nail, and eyelash services out of her home and worked as a home attendant. Tr. 52-59. Avivia furnished hair, nail, and eyelash services without a cosmetologist license or cosmetology schooling; her services included coloring, cutting, and styling hair, as well as polishing nails. Tr. 53-59. She also worked for In-Home Attendant Services and provided similar home services to relatives and neighbors who were familiar with her work. Tr. 55-56.

The vocational expert (VE) classified Avivia's past work in hair, nails, and eyelashes as a hairstylist, which Avivia performed at the light exertional level. Tr. 57. A hairstylist is considered a skilled position with a specific vocational preparation (SVP) of six. Tr. 57, 60. The VE also classified Avivia's past work as a home attendant as a home health aid, which Avivia performed at the medium exertional level. Tr. 57. A home health aid is considered a semiskilled position with an SVP of three. *Id.*

As to her medical conditions, Avivia testified that she had both physical[3] and mental medical conditions. Tr. 61–68. She explained that her physical conditions included her hands and feet cramping and locking up, likely due to carpal tunnel and rheumatoid arthritis, and body spasms. Tr. 61. She also confirmed that she was diagnosed with degenerative changes in her lumbar spine. Tr. 62. Avivia testified that those diagnoses limited her ability to stand to only twenty-minute periods, and they limited her ability to cook and perform household chores. Tr. 62. Additionally, Avivia testified that her physical limitations contributed to her mental condition (depression) because such limitations left her without work or the ability to take care of herself. Tr. 63–65. She testified that she took mental health medications and attended counseling therapy for her depression. Tr. 65.

Avivia testified that on a regular day, she normally would not leave her house; she only left the house to attend doctor appointments. Tr. 67. She also explained that she could cook but faced difficulty in the process. Tr. 64, 66.

After Avivia's testimony, the ALJ posed a series of hypothetical questions to the VE. Tr. 68–70. He asked the VE first to assume a person of the same age, education, and work experience as Avivia; the person is limited to work at the light exertional level; the person must walk at a normal walking pace on smooth, even surfaces; the person cannot climb ladders, ropes, or scaffolds but can frequently walk on ramps and stairs; the person can occasionally stoop, crouch, kneel, and crawl; the person can frequently push and pull with the bilateral lower extremities

[3] The court notes that the parties do not argue that the ALJ erred in connection with any of Avivia's physical impairments. This case is focused on whether the ALJ erred with respect to Avivia's mental impairments.

and reach and handle with the bilateral upper extremities; the person can only occasionally finger with the bilateral upper extremities; the person can perform detailed but not complex instructions and tasks; the person can frequently interact with supervisors, coworkers, patients, and clients but can only occasionally interact with the general public; the person can maintain adequate concentration, persistence, and pace to remain on task for ninety percent of the day; the person "can work avoiding assembly line and production paced work tasks"; and the person can frequently adapt to changes and workplace methods and routine. Tr. 68–69.

According to the VE, such a person could not perform Avivia's past work. Tr. 69. Additionally, the VE stated that such a person could obtain work available in the national economy as an office helper, a mail sorter or routing clerk, or a dining room attendant. Tr. 69, 72. Each of those jobs is a light exertion job requiring SVP two, unskilled work. Tr. 69.

Avivia's counsel cross-examined the VE. Tr. 71. When asked about the same hypothetical worker with the additional limitation of missing more than four days of work a month, the VE stated that such a limitation would preclude competitive employment. Tr. 71. Her counsel asked no further questions of the VE. Tr. 71–72.

The ALJ issued his decision on April 24, 2025, finding that Avivia was not disabled from the date the application was filed through the date of the decision. Tr. 37–38. Avivia requested review of the ALJ's decision, which the Appeals Council denied on July 3. 2025. Tr. 1. Avivia timely filed a complaint in federal court on September 10, 2025. ECF No. 1.

### 2. *Legal Standards*

The Social Security Act provides disability insurance benefits to individuals with physical and mental disabilities who have contributed to the program and provides supplemental income to individuals with physical and mental disabilities who have limited income and resources. *See* 42 U.S.C. §§ 423, 1382. Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

The Commissioner uses a sequential, five-step approach to determine whether the claimant is disabled. *Schofield v. Saul*, 950 F.3d 315, 317 (5th Cir. 2020); 20 C.F.R. § 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof on the first four steps, and the Commissioner bears the burden on the fifth step. *Keel v. Saul*, 986 F.3d 551, 555 (5th Cir. 2021). A finding that the claimant is disabled or not disabled at any point in the five-step review terminates the analysis. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

This court's review of the ALJ's disability determination is "highly deferential." *Garcia v. Berryhill*, 880 F.3d 700, 704 (5th Cir. 2018) (citations omitted). The court "ask[s] only whether substantial evidence supports the decision and whether the correct legal standards were employed." *Id.* "A decision is supported by substantial evidence if 'credible evidentiary choices or medical findings support the decision.'" *Salmond v. Berryhill*, 892 F.3d 812, 817 (5th Cir. 2018) (quoting *Whitehead v. Colvin*, 820 F.3d 776, 779 (5th Cir. 2016)). "Substantial evidence is 'more than a mere scintilla but less than a preponderance.'" *Id.* (quoting *Williams v. Admin. Rev. Bd.*, 376 F.3d 471, 476 (5th Cir. 2004)). "It means—and means only—'such relevant evidence as a reasonable mind

might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (quoting *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938)). The reviewing court must scrutinize the record to determine whether substantial evidence supports the ALJ's decision, but it may not reweigh the evidence or substitute its judgment. *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005).

### *3. Analysis*

#### *A. Step One*

At step one, the ALJ must determine whether the claimant is engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). A person engaged in substantial gainful activity is not disabled, regardless of her medical condition, age, education, or work experience. *Id.*

The ALJ found that Avivia had not engaged in substantial gainful activity since the alleged onset date. Tr. 19. The ALJ's step-one finding is supported by substantial evidence, and Avivia does not dispute this finding.

#### *B. Step Two*

At step two, the ALJ determines whether any of the claimant's impairments, or any combination thereof, is severe and has lasted or is expected to last a continuous period of at least twelve months. 20 C.F.R. §§ 404.1520(a)(4)(ii) (citing 20 C.F.R. § 404.1509), 416.920(a)(4)(ii) (citing 20 C.F.R. § 416.909). An impairment is severe if it "significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c). An impairment is "not severe only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education[,] or work experience." *Keel*, 986 F.3d at 555 (quoting *Stone v. Heckler*,

752 F.2d 1099, 1101 (5th Cir. 1985)). "A person who does not have a 'severe impairment' is not disabled." *Schofield*, 950 F.3d at 318 (citing 20 C.F.R. § 404.1520(c)).

The ALJ found that Avivia has the following medically determinable severe impairments: degenerative disc disease of the lumbar spine; carpal tunnel syndrome; rheumatoid arthritis; obesity; major depressive disorder; and anxiety disorder. Tr. 20. Avivia does not dispute the ALJ's step-two findings, and the ALJ's step-two findings are supported by substantial evidence.

### *C. Step Three*

At step three, the ALJ determines if any severe impairment meets or equals a listed impairment (Listing) in Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii); *see also* 20 C.F.R. Pt. 404, Subpt. P, App. 1. The Listings describe impairments that the SSA considers "severe enough to prevent an individual from doing any gainful activity, regardless of . . . age, education, or work experience." 20 C.F.R. §§ 404.1525(a), 416.925(a). The claimant will be found disabled if the claimant's impairments meet or equal all of the specified criteria of a Listing. 20 C.F.R. §§ 404.1520(d), 416.920(d); *Whitehead*, 820 F.3d at 781. The claimant has the burden of establishing that their impairments match the Listing. *Whitehead*, 820 F.3d at 781.

The ALJ found that Avivia did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. Tr. 20. The ALJ considered Listing Sections 1.15, 1.16, 11.14, 14.09, 12.04, and 12.06, as well as Social Security Ruling (SSR) 19-2p (Evaluating Cases Involving Obesity). Tr. 20–21.

The ALJ determined that Avivia's musculoskeletal impairments did not meet or equal the criteria set forth in Listing Sections 1.15 or 1.16. Tr. 20. Avivia's medical documentation did

not reflect the medical need for the use of a walker, bilateral crutches, bilateral canes, or a wheeled and seated mobility device that would require the use of both hands. *Id.* Also, the record did not show Avivia's inability to use one upper extremity to independently initiate, sustain, and complete work-related activities involving fine and gross movements. *Id.*

The ALJ determined that Avivia's carpal tunnel impairment did not meet or equal the criteria for the impairment in Listing 11.14 (peripheral neuropathy) because the record did not satisfy either paragraph A or B. Tr. 20. The ALJ found that the record did not show the requisite disorganization of motor function in two extremities resulting in an extreme limitation in the ability to stand up from a seated position, to balance while standing or walking, or to use the upper extremities. *Id.* The ALJ also determined that the record did not establish that Avivia had a marked limitation in both physical functioning and one of the four areas of mental functioning in paragraph B. *Id.* In doing so, the ALJ noted that Avivia's medical evaluation revealed only one limitation in her upper extremity (Tinel's signs), and that it indicated five out of five motor strength in her upper extremities. *Id.* (citing Tr. 753–64). The ALJ also considered Avivia's report that she could attend to her personal care, prepare meals, drive a car, and shop in stores. *Id.* (citing Tr. 299–306; 52–73). Accordingly, the ALJ did not find that Avivia's impairments met this Listing.

Next, the ALJ determined that Avivia's arthritic impairment did not meet or equal the criteria set forth in Listing 14.09 (inflammatory arthritis) because it did not satisfy any of paragraphs A, B, C, or D. Tr. 20. The ALJ determined that Avivia did not display persistent deformity of one or more major joints in a lower extremity, that would make her unable to "ambulate effectively" or to "perform fine and gross movements effectively."

Tr. 21. The ALJ found that Avivia did not have inflammation or deformity in one or more major peripheral joints involving both (a) two or more organs or body systems to at least a moderate level of severity and (b) at least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss). *Id.* The ALJ also found no evidence that Avivia had been diagnosed with ankylosing spondylitis or other spondyloarthropathies with ankylosis of the dorsolumbar or cervical spine. *Id.* Lastly, the ALJ determined that Avivia had not experienced repeated manifestations of inflammatory arthritis with at least two of the constitutional symptoms or signs and any marked limitation of the following: daily living, maintaining social function, or completing tasks in a timely manner due to deficiencies in concentration, persistence, or pace. *Id.* Accordingly, the ALJ did not find that she met Listing 14.09.

The ALJ also determined that Avivia's mental impairments did not meet the severity of impairments in Listing Sections 12.04 (depressive, bipolar, and related disorders) and 12.06 (anxiety and obsessive-compulsive disorders) because Avivia did not satisfy the "paragraph B" or the "Paragraph C" criteria. Tr. 21–23. To be found disabled at step three, the claimant's mental disorder must satisfy the requirements of either: both paragraphs A and B, or both paragraphs A and C. Listing § 12.00(A)(2). A claimant who fails to satisfy either paragraphs B or C cannot meet or equal the severity of impairments in the Listings in Section 12.

The paragraph B criteria "represent the areas of mental functioning a person uses in a work setting." Listing § 12.00(A)(2)(b). Those areas are the claimant's ability to (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage oneself. The ALJ must evaluate the claimant's ability to function in each of those areas. *Id.*

To meet the paragraph B criteria, a claimant's disorder must result in an "extreme" limitation in one or a "marked" limitation in the two of the four areas of mental functioning. *Id.* The ALJ found that Avivia had only moderate limitations in each of the four areas.

As for understanding, remembering, or applying information, the ALJ determined that Avivia had a moderate limitation. Tr. 21. The ALJ explained that Avivia's medical records reflected that she had intact memory, adequate concentration and good attention, logical thought process, and fair insight and judgment, despite her self-reported memory and understanding deficits. *Id.* (citing Tr. 554–739). But the ALJ stated that Avivia's function reports indicated some problem with following written instructions, though those reports showed that she could follow spoken instructions well. *Id.* (citing Tr. 323–30).

As for interacting with others, the ALJ determined that Avivia had a moderate limitation. Tr. 21. The ALJ acknowledged that some of Avivia's medical records demonstrated anxiety and depression symptoms, including anger issues, crying spells, and self-isolation. *Id.* (citing Tr. 554–739). However, the ALJ noted that Avivia's treatment notes from July 2023 to June 2024 reflected cooperative behavior and normal emotional affect. Tr. 22 (citing Tr. 554–739). Also, the ALJ stated that Avivia's function reports indicated that she could get along with authority figures and family, friends, and neighbors, *id.* (citing Tr. 323–30), notwithstanding her problems with getting along with family, friends, and neighbors in her other function report. *Id.* (citing Tr. 299–306).

As for concentrating, persisting, or maintaining pace, the ALJ determined that Avivia had a moderate limitation. Tr. 22. The ALJ acknowledged Avivia's self-report of poor concentration and motivation, as well as fatigue and sleep problems. *Id.* (citing Tr.

554–739). But the ALJ noted that Avivia's mental status exams, ranging from July 2023 to September 2024, did not match Avivia's self-reports. *Id.* Instead, the ALJ found that those exams revealed her ability to recall two out of three words after a five-minute interval, intact remote memory and association, logical thought process, adequate fund of knowledge, normal perception, and normal thought content. *Id.* (citing Tr. 554–739, 770–77). The ALJ also noted that Avivia's mental status exams from July 2023 to June 2024 revealed good attention and concentration, and fair insight and judgment, whereas Avivia's September 2024 mental status exam revealed adequate attention, concentration, insight, and judgment. *Id.* Moreover, the ALJ determined that Avivia's reports of preparing meals, going out alone, handling her finances, driving her car, and shopping in the store and by phone suggested that she retained the ability to maintain attention and concentration. *Id.* (citing Tr. 323–30).

As for adapting or managing oneself, the ALJ determined that Avivia had no more than a moderate limitation.[4] Tr. 22. The ALJ noted that Avivia reported some irritability and anxiety, and that her treatment notes and consultative exam reflected her depressed mood, tearfulness, complaints of crying spells, sadness, and self-isolation. *Id.* (citing Tr. 554–739; 770–77). On the other hand, the ALJ noted that Avivia's psychological evaluation in September 2024 and treatment notes from July 2023 to June 2024 reflected her cooperative behavior and her normal thought content, psychomotor behavior, and speech. *Id.* (citing Tr. 554–739). The ALJ noted that Avivia did not have "agitation, mental

[4] The court notes that the ALJ states Avivia's limitation for adapting or managing herself as (1) no more than mild *and* (2) moderate. ECF No. 22. As such, the court describes the limitation as no more than moderate. Nevertheless, this discrepancy, even if an error, is harmless, as neither moderate limitation nor mild limitation is sufficient to meet paragraph B's requirements.

retardation, fidgeting behavior, tremors, tics, hyperactivity, or involuntary movements" during her psychological evaluation. *Id.* (citing Tr. 770–77). The ALJ also considered Avivia's reports of performing several tasks, such as preparing meals, shopping in the store and by phone, driving a car, and handling her finances. *Id.* (citing Tr. 299–306; 323–30).

Because Avivia did not have at least one "extreme" limitation or two "marked" limitations in the four areas of mental functioning, the ALJ determined that Avivia did not satisfy the paragraph B criteria.

In addition, the ALJ determined that Avivia failed to satisfy the paragraph C criteria because the evidence did not show that Avivia's mental impairments were "serious and persistent"—that is, there was no evidence to demonstrate that she would need a highly structured setting, and there was no evidence that she had attained only "marginal adjustment." Tr. 23; *see also* Listing § 12.00(G)(2).

Although "[o]besity is not a listed impairment," it may cause functional effects that may increase the severity or functional limitations of the individual's other impairments. SSR 19-2p, 2019 WL 2374244 (May 20, 2019). "No specific weight or BMI establishes obesity as a 'severe' or 'not severe' impairment." *Id.* Instead, an ALJ must assess "the effect of obesity on a person's functioning when deciding whether the impairment is severe." *Id.* In Avivia's case, the ALJ determined that Avivia's obesity is not a severe impairment, singly or in combination with the other impairments, because the record did not show "the requisite impact on musculoskeletal, respiratory, cardiovascular, or other body system functioning." Tr. 21.

The ALJ's step-three determination is supported by substantial evidence and comports with the law. Avivia does not challenge the ALJ's step-three findings.

### *D. Residual Functional Capacity*

Before reaching the final two steps, the ALJ must assess the claimant's residual functional capacity (RFC). 20 C.F.R. §§ 404.1520(e) (citing 20 C.F.R. § 404.1545), 416.920(e) (citing 20 C.F.R. § 416.945). The RFC is a determination of the most a claimant can do despite all physical and mental limitations. *Perez*, 415 F.3d at 461–62 (citing 20 C.F.R. § 404.1545(a)(1)). The RFC determination is based on "the medical evidence in the record, including the testimony of physicians and the claimant's medical records." *Webster v. Kijakazi*, 19 F.4th 715, 718 (5th Cir. 2021). "An 'ALJ is responsible for determining an applicant's residual functional capacity.'" *Id.* (quoting *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995)); *see also* 20 C.F.R. §§ 404.1546(c), 416.946(c).

The ALJ determined that Avivia had the RFC[5] to perform

> light work . . . except all walking must be on smooth, even surfaces and at a normal walking pace. The claimant cannot climb, ladders, ropes, or scaffolds. The claimant can occasionally stoop, kneel, crouch, and crawl. . . . The claimant can perform detailed (but not complex) instructions and tasks; can frequently interact with supervisors, coworkers, patients, and clients but can only occasionally interact with the public, can maintain concentration, persistence, or pace to remain on-task for 90 percent of the workday; can work avoiding assembly line production paced work tasks; and can frequently adapt to workplace methods and routines.

Tr. 23.

In making this determination, the ALJ considered the entire record, including Avivia's hearing testimony and statements in her

[5] Avivia does not dispute the ALJ's findings as to her physical RFC; instead, she disputes the ALJ's findings as to her mental RFC. The court therefore focuses on the ALJ's findings with respect to Avivia's mental RFC.

disability report, her medical records, and her medical providers' statements and opinions. Tr. 23.

As for Avivia's statements at the hearing and in her disability report, the ALJ's summary of those statements is consistent with Avivia's hearing testimony, summarized above. Essentially, Avivia maintains that she is severely limited by her physical and mental conditions, specifically her depression. She stated that she would leave her house only to attend medical appointments and that her trouble with finding work contributed to her depression.

Avivia has a history of mental health problems, including major depressive disorder, Tr. 606, 631, and anxiety disorder. Tr. 650, 668. She reported to her medical providers that her mental health symptoms improved with medication, Tr. 565, though she did experience worsening symptoms near the end of her therapy treatments. Tr. 558, 560, 562. She reported that her therapy sessions provided her with a better understanding of her thoughts. Tr. 560, 578. Avivia's clinical evaluations showed her to be cooperative and polite, with intact memory and good attention span and concentration. Tr. 569, 582, 605. She also had fair insight and judgment. Tr. 569, 582, 605.

The ALJ found that, while Avivia's medically determinable impairments could reasonably be expected to cause her alleged symptoms, her statements about the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence in the record. Tr. 24. The court turns next to an analysis of that finding.

The ALJ considered Avivia's testimony that she had significant mental limitations but found that her medical records did not fully match her allegations about the severity and limiting effects of her impairments. Tr. 24. The ALJ acknowledged that Avivia had a history of depression and anxiety disorder. *Id.* (citing

Tr. 554–739; 770–77). The ALJ noted, however, that Avivia's mental health symptoms improved with treatment. *Id.* (citing Tr. 554–719). On July 28, 2023, Avivia reported that she was compliant with her medications and that she had experienced improved symptoms since the last visit. *Id.* (citing Tr. 554–719). The same was true on January 17, 2024. Tr. 25 (citing Tr. 720–39). The ALJ then acknowledged that Avivia reported worsening depression during her June 24, 2024 visit but that the deterioration of her depression was caused by noncompliance with her medications. *Id.* The ALJ observed that Avivia's mental status exams consistently showed the following: cooperative attitude, spontaneous language, logical thought process, full orientation, alert sensorium, intact memory, appropriate fund of knowledge, average intellectual functioning, fair insight, and fair judgment. Tr. 24–25 (citing Tr. 554–739). Additionally, the ALJ acknowledged that Avivia's concentration and attention level deteriorated to "easily distracted" during her June 4, 2024 exam, but as previously explained, the ALJ attributed that change to noncompliance with medication. Tr. 25 (citing Tr. 720–39). The ALJ also considered that the record contained no objective evidence showing that Avivia had sought mental health treatment or medication for the ten months after her June 4, 2024 mental status exam. Tr. 25–26. Avivia also received a consultative psychological examination on September 14, 2024, which the ALJ determined was essentially normal. Tr. 26 (citing Tr. 770–77). Despite Avivia's reports of fatigue, sadness, crying spells, and sleep problems, her mental status exam was mostly consistent with her previous three exams, and her concentration was deemed adequate. *Id.* (citing Tr. 720–39).

The ALJ also reviewed the opinions and prior administrative findings in the record.[6] The ALJ addressed the opinion of Oghosa Ebomwony, who is a family nurse practitioner that performed a mental capacity assessment for Avivia on August 24, 2024. The ALJ considered Ebomwony's ratings of Avivia's limitations in the area of concentration, persistence, or maintaining pace. Tr. 30. Ebomwomy found that Avivia had marked limitations in these categories: the ability to initiate and perform a task she knows how to do; the ability to sustain an ordinary routine and regular attendance at work; and the ability to work a full day without needing more than the allotted number or length of rest periods during the day. Tr. 30 (citing Tr. 740–52). The ALJ also noted that Ebomwomy found that Avivia had extreme limitation in her ability to work at an appropriate consistent pace, or complete tasks in a timely manner. Tr. 30 (citing Tr. 740–52). Ebomwomy also found that Avivia had no more than a mild limitation in her ability to adapt or manage herself and interact with others. *Id.* (citing Tr. 740–52). The ALJ observed that nurse practitioner Ebomwony did not explain or support her findings, and found that her findings were inconsistent with Avivia's clinical evaluations, which reflected no marked limitations in concentration, persistence, or pace. Tr. 31 (citing Tr. 554–739).

The ALJ considered the opinion of Dr. Gayle Pitcher, who performed a mental status examination for Avivia on September 14, 2024. Dr. Pitcher found that Avivia is unlikely to:

- have the ability to initiate, sustain concentration, or persist in work-related activity at a reasonable pace due to unstable mood and anxiety;

[6] As noted above, the court focuses on the opinions and prior administrative findings pertaining to Avivia's mental RFC because Avivia does not dispute the ALJ's findings with respect to her physical RFC.

- maintain effective social interaction on a consistent and independent basis with supervisors, coworkers, and the public, or;
- cope with normal pressures in a competitive work setting.

Tr. 31 (citing Tr. 770–77). The ALJ found that Dr. Pitcher did not support her opinion with appropriate clinical findings. Tr. 31. According to the ALJ, Dr. Pitcher's mental status findings showed that Avivia had greater functional abilities than Dr. Pitcher proposed. *Id.* Likewise, the ALJ found Dr. Pitcher's opinion to be unsupported because it contains tentative statements as to Avivia's mental functional abilities, which the ALJ found to be vague. *Id.* Additionally, the ALJ found that Dr. Pitcher's opinion was inconsistent with the effectiveness of Avivia's brief treatments (including some improvement of the symptoms in the treatment reports) and benign mental status exam findings (including good attention and concentration, intact memory, logical thought process, and average intellectual functioning). Tr. 31 (citing Tr. 554–739). Although the ALJ found Dr. Pitcher's opinion unpersuasive, the ALJ nevertheless adopted her clinical findings. Tr. 31.

Dr. Karla Delcour, a state agency psychological consultant (SAPC), reviewed Avivia's medical records and evaluated the severity of Avivia's mental impairments, including the paragraph B criteria. As to the paragraph B criteria, Dr. Delcour found that Avivia could maximally understand, remember, and carry out detailed, but not complex, instructions; make decisions; attend and concentrate for extended periods; accept instructions; and respond appropriately to changes in a routine work setting. Tr. 79. The ALJ found that Dr. Delcour's opinion to be generally persuasive because it is generally consistent with the benign mental status exams, Tr. 30 (citing Tr. 75–80), including the January 17, 2024

and June 4, 2024 mental status exams. *Id.* (citing Tr. 554–739). The ALJ also found Dr. Delcour's statements about Avivia's ability to perform detailed, non-complex tasks were supported by Avivia's treatment notes (including mental health improvement, effectiveness of medications, and stable mood), *id.*, and the benign mental status exam. *Id.* (citing Tr. 770–77). In contrast, the ALJ did not find persuasive Dr. Delcour's finding that Avivia had a moderate limitation in interacting with others because it (1) underestimated Avivia's limitations and (2) was not consistent with Avivia's self-reports of depression symptoms like tearful mood and irritability. *Id.* (citing Tr. 554–739). The ALJ nevertheless found that Avivia had a moderate limitation in interacting with others but also restricted her "to occasional interaction with the public as well as frequent interaction with coworkers and supervisors." Tr. 30.

On reconsideration, SAPC Dr. Laurence Ligon reviewed Avivia's medical records and evaluated the severity of her mental impairments, including the paragraph B criteria. Dr. Ligon found no severe impairment; he found no more than mild limitations as to all the paragraph B criteria. Tr. 110. The ALJ found Dr. Ligon's opinion to be unpersuasive because it was (1) inconsistent with Avivia's depression symptoms reported in her clinical evaluations, and (2) unsupported by an appropriate explanation. Tr. 30 (citing Tr. 554–719). The ALJ explained that Avivia's history of depressed mood, fatigue, sadness, crying spells, appetite loss, sleep problems, and her benign mental status exam performed by Dr. Pitcher instead support a finding of a severe mental impairment. *Id.* (citing Tr. 554–739; 770–77).

The ALJ's conclusions appear to be based on a thorough reading of the records. Avivia has failed to demonstrate that she is more limited than the ALJ found. She does not point to any evidence that the ALJ credited that would require further

limitations, and the record is replete with evidence supporting the RFC. Thus, the court concludes that the RFC is supported by substantial evidence.

Avivia advances two arguments against the ALJ's RFC determination. First, Avivia argues that the ALJ's limitation in her ability to interact with others is logically flawed and internally inconsistent, thus requiring remand. ECF No. 9 at 7. She asserts that the ALJ's limitation to "frequent" interaction with supervisors, coworkers, clients, and patients, but only "occasional" interaction with the general public is ambiguous because "clients" and "patients" are part of the public and because those words do not have a standard vocational definition. *Id.* at 8–9. She argues that the court cannot determine whether the VE was confused by the meaning of these terms, which precludes the court from providing meaningful judicial review. *Id.* at 9, 11.

The ALJ's limitation is not internally inconsistent. The ALJ's RFC formulation distinguishes between "patients" and "clients," and "the public." Assuming for discussion that Avivia is correct that patients and clients are subsets of the public, the RFC does nothing more than allow for frequent interaction with those subsets of the public but limit Avivia to occasional contact with the rest of the public. This does not create a "logical impossibility." Nor is there anything in the record to show that the VE was confused by the inclusion of the words "patient" and "client" in the hypothetical question that the ALJ posed. Tr. 69 (the ALJ asking whether there were any "[q]uestions about the hypothetical," and the VE answering "I'm good, Judge").

The ALJ's inclusion of the terms "patient" and "client" does not render the RFC formulation ambiguous. Avivia's argument is based on Social Security Ruling 85-15, 1985 WL 56857, and Program Operations Manual System (POMS) DI 25020.010. *See* ECF No. 9 at 8. She states that each of those regulatory sources

"recognize only three categories of individuals with whom a claimant may interact in a work setting: supervisors, coworkers, and the public." *Id.* The court disagrees. SSR 85-15 simply recognizes that "[t]he basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting." 1985 WL 56857, at *4. POMS DI 25020.010 is similar. Neither of the cited authorities requires the ALJ to use only certain words when formulating the RFC. Avivia cites no statute, rule, regulation, or case to support her theory.

In any event, any error is harmless. As will be discussed further in connection with step five, the ALJ found that Avivia could perform other work in the national economy as a dining room attendant. Tr. 37; *see also* Tr. 72 (describing three other jobs that Avivia could perform). Avivia points out that the other jobs that the VE testified she could perform do not involve either patients or clients. Thus, even if patients and clients are considered to be part of the general public, the VE's testimony would be unaffected.

Second, Avivia argues that the ALJ's finding that Avivia can remain on task for ninety percent of the workday was wholly unsupported by evidence, requiring remand to supply an explanation. ECF No. 9 at 14, 17. She argues that "the ALJ provided no explanation whatsoever for how or why this precise percentage was derived." ECF No. 9 at 15. Avivia does not actually argue that the percentage was incorrect. Nor does she point to any evidence in the record to support a different percentage.

The ALJ *did* explain his finding. The ALJ discussed Avivia's mental status exams on July 28, 2023, and January 17, 2024, and noted Avivia's intact memory, good attention and concentration, average intellectual functioning, fair insight, and fair judgment.

Tr. 24–25 (citing Tr. 554–719). The ALJ then stated that "[t]hese objective findings support a finding that the claimant can maintain concentration, persistence, and pace for 90 percent of the workday." Tr. 25. The ALJ also considered the mental status exam from June 4, 2024, which found that Avivia was distracted easily, and explained that the deterioration in her symptoms was due to non-compliance with her medications. Tr. 25 (citing Tr. 720–39). The ALJ is entitled to rely on such evidence to make the time-off task percentage finding. *See, e.g., Madkins v. Bisgnano*, 150 F.4th 657, 668 (5th Cir. 2025) (per curiam) (explaining that doctors' findings that a claimant had good or adequate concentration provided substantial evidence for the claimant's ability to stay on task for the entire workday, despite a medical opinion supplying a different percentage). It is the ALJ's duty to consider the evidence and determine the RFC. It is not up to the court to re-weigh the evidence, and reversal is not warranted even if the court disagrees with the ALJ. The ALJ's explained his findings, and his findings are supported by the evidence.

The RFC determination was supported by substantial evidence and was determined. Thus, the court finds no error in the ALJ's RFC assessment.

***E. Step Four***

At step four, the ALJ determines whether the claimant can perform jobs they previously worked by comparing the RFC determination with the demands of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f); *see also Perez*, 415 F.3d at 462. If the claimant can perform their past work, they are not disabled. 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant cannot perform their past work, the ALJ proceeds to step five. *See* 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

The ALJ posed a hypothetical to the VE during the hearing that contained all of the limitations in the RFC that the ALJ ultimately found. Tr. 68–69. The VE testified that a person of the same age, education, past work history, and limitations as to Avivia could not perform her past work as a hair and nail stylist, or as a home attendant. Tr. 69. Based on that testimony, the ALJ found that Avivia was unable to perform her past relevant work. Tr. 36.

Because the VE's testimony was based on the ALJ's hypothetical question that incorporated all the limitations reasonably recognized by the ALJ, and because Avivia's attorney had the opportunity to cross-examine the VE, the VE's testimony is substantial evidence supporting the ALJ's step-four determination. *See Masterson v. Barnhart*, 309 F.3d 267, 273–74 (5th Cir. 2002) (holding that the ALJ properly relied on the VE's testimony because the ALJ "scrupulously incorporated" all the limitations "supported by the evidence and recognized by the ALJ" and gave an opportunity for cross examination).

This finding is supported by substantial evidence and is not in error.

### *F. Step Five*

At step five, the ALJ determines whether the claimant can perform any other work by considering the claimant's RFC and other factors, including age, education, and past work experience. *Schofield*, 950 F.3d at 318 (quoting 20 C.F.R. § 404.1520(a)(4)(v)). If the claimant can perform other work available in significant numbers in the national economy, the claimant is not disabled. *Id.* (citing 20 C.F.R. § 404.1520(g)).

The ALJ found that Avivia could perform work that exists in significant numbers in the national economy. Tr. 36. As such, he found Avivia not to be disabled. Tr. 37. The ALJ relied on the

VE's testimony that an individual with Avivia's age, education, work experience, and RFC would be able to work as a dining room attendant. Tr. 37.

As with step four, the VE's testimony is substantial evidence because the VE's testimony was based on the ALJ's hypothetical question that incorporated all the limitations reasonably recognized by the ALJ, and Avivia's attorney had the opportunity to cross-examine the VE.

The court discussed above Avivia's argument contesting the inclusion of the words "patient" and "client" in the RFC. *Supra* at 20. Again, there was no error, and any error would be harmless. The ALJ found that Avivia could perform jobs in the national economy despite her being limited to only "occasional" interaction with the general public. Tr. 69–72. Avivia concedes that the position of a dining room attendant "do[es] not involve interaction with 'patients' or 'clients' in any meaningful sense distinct from the general public." ECF No. 9 at 10. Accordingly, the ALJ's finding that Avivia could interact "frequently" with "patients" and "clients" would not preclude employment not requiring such interaction at all. In other words, there is no reason to believe that omitting the allegedly erroneous part of the RFC would change the VE's testimony.

Accordingly, the ALJ's findings at step five are supported by substantial evidence and are not the product of legal error.

***4. Conclusion***

The ALJ's decision denying social security benefits is consistent with the law and supported by substantial evidence. There is no genuine issue of material fact, and summary judgment is appropriate. Fed. R. Civ. P. 56(a), (c).

Accordingly, Plaintiff's Motion for Summary Judgment, ECF No. 9, is **DENIED**. The Commissioner's Motion for Summary

Judgment, ECF No. 13, is **GRANTED**, and the Commissioner's final decision is **AFFIRMED**.

A separate final judgment will be entered.

Signed at Houston, Texas, on August 31, 2026.

Peter Bray
United States Magistrate Judge